Thomas J. STRAMA, Plaintiff,

v.

Paul Q. PETERSON, M.D., et
al., Defendants.

No. 78 C 2144.

United States District Court,
N.D. Illinois, E.D.

Dec. 8, 1982.

Stephen G. Seliger, Chicago, Ill., for
plaintiff.

Joseph M. Gagliardo, Asst. Corp. Counsel,
Stanley Garber, Corp. Counsel, Chicago, Ill.,
for defendants.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In June 1978 Thomas J. Strama ("Strama") filed a 42 U.S.C. § 1983 ("Section 1983") action against a number of defendants, including former Chicago Fire Commissioner Richard Albrecht ("Albrecht"). Albrecht had allegedly discharged Strama from his job as a career paramedic without a hearing (a claimed violation of Strama's due process rights).

On August 3, 1981 Strama and Albrecht filed a stipulation (the "Agreement") under which (1) Strama was to be reinstated with back pay and full credit for seniority and benefits due since his February 18, 1978 discharge, (2) Albrecht was to be dismissed with prejudice as a defendant[1] and (3) Strama agreed not to sue the City of Chicago ("City") or its agents on any claim arising from his discharge. Accordingly this Court dismissed Albrecht as a defendant. Its dismissal order was not asked to, and did not, incorporate the terms of the Agreement.

Strama has now moved under Fed.R. Civ.P. ("Rule") 60(b)(6) to vacate the dismissal, alleging violation of the Agreement by Albrecht's successor, William R. Blair ("Blair"). Strama then seeks (1) summary enforcement of the Agreement by an award of compensatory damages for its breach and (2) a hearing on the propriety of a second and allegedly retaliatory discharge. · For the reasons stated in this memorandum opinion and order, Strama's motion and his requests for summary enforcement and a hearing are denied.

*Background*[2]

Agreement ¶ 2 provided:

That the plaintiff will receive full credit for seniority, continuity of service, salary pension, and all other benefits due him for the period from February 18, 1978,

---

1. Strama was however permitted to pursue an award of attorney's fees from Albrecht under 42 U.S.C. § 1988. *See* 541 F.Supp. 75 (N.D. Ill.), *vacated,* 689 F.2d 661 (7th Cir.1982).

2. None of the underlying facts in this litigation is in issue here. They are recited in this Court's June 11, 1981 memorandum opinion and order at 2–3.

the date of his discharge, to the date of his return on August 1, 1981.

Strama contends Paragraph 2 was violated in four ways [3] (Motion ¶ 2 A–D):

1. He was not given assignments to which he was entitled by seniority.

2. He was not given the opportunity to apply for promotions, although similarly situated paramedics were allowed to apply for promotion and were promoted.

3. He never received annual uniform allowances for the period of his discharge.

4. He was not given preference in scheduling his vacations, while those with less seniority were given such preference over him.

In addition Strama claims (Motion ¶ 3) he was terminated from his position March 25, 1982 without a hearing in retaliation for his prosecuting this action. Finally Strama asserts (Motion ¶ 4) the Chicago Fire Fighters Union, Local No. 2 ("Union") has refused to proceed with his current grievances until this Court rules on his request for enforcement of the Agreement.

Shortly after Strama's motion was filed this Court wrote to counsel, raising a question as to the Court's jurisdiction to enforce the Agreement. It appeared then to this Court that Strama's effort to enforce the Agreement pointed to an ordinary contract action requiring separate grounds for federal jurisdiction. See Court's Sept. 15, 1982 Letter to Counsel at 1 and n. 1. This Court's serious concerns as to that threshold jurisdictional issue, among other considerations, lead to the conclusion Strama's motion and requests for relief and an evidentiary hearing should be denied.

### Jurisdictional Issues

Strama really seeks vacation of Albrecht's dismissal only as a predicate for enforcement of the Agreement. Simply vacating the dismissal makes no sense, for Strama's suit against the remaining defendants has long since proceeded to trial and final judgment. Thus mere vacation of the dismissal would "revive" Strama's suit against Albrecht or Blair after the issues had already been tried once (albeit not in a way binding Albrecht or Blair)!

Even were this Court able to overcome (or inclined to ignore) that conceptual conundrum, the practical result of vacating the dismissal now would be to return Strama to an early point in his suit against Albrecht (or Blair). That is not what Strama wants to gain by his motion. Accordingly this Court's Rule 60(b)(6) *power* to vacate for breach of a settlement agreement (see Mem. 2–4; R. Mem. 1) is plainly not the crucial point here.[4]

Instead the real question is whether this Court has jurisdiction to enforce the Agreement, summarily or otherwise. On that score the parties' submissions only highlight the difficulty of the question (and also underline the danger to Strama of proceeding along his proposed route).

In support of his motion Strama cites *Aro Corp. v. Allied Witan Co.*, 65 F.R.D. 513 (N.D.Ohio 1975), *aff'd*, 531 F.2d 1368 (6th Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976). There Aro Corporation ("Aro") had filed a 28 U.S.C. § 1338 action for patent infringement against Allied Witan Company ("Allied"). Before trial the parties settled their dispute by entering into a license agreement, and the case

---

**3.** Strama was promptly reinstated and paid back wages, so those provisions of the Agreement are not involved. Pl. Mem. 1–2.

**4.** Nevertheless this Court is constrained to comment on the weakness of Blair's efforts (Ans. Mem. 2–5) to deny Strama has advanced facts justifying a grant of his Rule 60(b)(6) motion. First, Strama's allegations of breach of the Agreement (the real "thrust" of his motion, contrary to Blair's Ans. Mem. 3 assertion) might, in certain circumstances, justify granting a Rule 60(b)(6) motion. As discussed be-

low, that is conceded by the main case on which *Blair* relies (Ans. Mem. 5). Second, Blair's claim (Ans. Mem. 4–5) that Strama's motion is untimely is sheer nonsense, given Strama's prompt resort to union grievance procedures and his prompt motion once that route was blocked. Pl. R. Mem. 3–4. Rule 60(b)(6) motions must be filed in a "reasonable" time, and Strama's meets that test. See 11 Wright and Miller, *Federal Practice and Procedure* § 2864, at 212 (1973).

was dismissed by stipulation of the parties. When Allied breached the agreement six weeks later by refusing to make a royalty payment, Aro filed a Rule 60(b)(6) motion praying for vacation of its dismissal order and for specific performance of the licensing agreement. Allied challenged the district court's jurisdiction to enforce what it portrayed as its contract with Aro, a nondiverse party, but the court ruled it had the requisite subject matter jurisdiction and ordered Allied to abide by the agreement. 65 F.R.D. at 515. That decision was affirmed by the Court of Appeals for the Sixth Circuit, holding (1) Allied's repudiation of the agreement justified reopening the proceedings under Rule 60(b)(6) and (2) the district court was empowered to enforce the agreement despite the lack of diversity of citizenship between the parties. 531 F.2d at 1371.

Blair's Ans. Mem. 5–8 points out *Aro* was considered carefully—and disapproved—in *Fairfax Countywide Citizens Ass'n v. County of Fairfax,* 571 F.2d 1299, 1302–03 (4th Cir.), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978) (footnotes and citations omitted):

> We are in agreement with the Sixth Circuit that, upon repudiation of a settlement agreement which had terminated litigation pending before it, a district court has the authority under Rule 60(b)(6) to vacate its prior dismissal order and restore the case to its docket.... We respectfully differ, however, with the *Aro* court in its conclusion that, once the proceedings are reopened, the district court is necessarily empowered to enforce the settlement agreement against the breaching party. We are of the opinion that the district court is *not* so empowered unless the agreement had been approved and incorporated into an order of the court, or, at the time the court is requested to enforce the agreement, there exists some independent ground upon which to base federal jurisdiction.

Because *Fairfax* deals so thoughtfully with the problems this Court perceived when

Strama's motion was first presented, this opinion will review its analysis at some length.

In reaching its conclusion, the Fourth Circuit focused on the limited scope of a district court's jurisdiction. Because the settlement agreement between the nondiverse parties in *Fairfax* was essentially a state law contract, the court held it could not be enforced in an original federal action. *Id.* at 1303. Next the Fourth Circuit rejected the Sixth Circuit's alternate theories of jurisdiction:

1. As for the notion a district court has "inherent power" to enforce settlement agreements, the court responded such power nevertheless "presupposes the existence of federal jurisdiction over the case or controversy." *Id.* at 1304.

2. As for the concept the district court's enforcement jurisdiction derived from its jurisdiction over the original suit, the court said (*id.* at 1305):

> We think, however, that derivative jurisdiction should be grounded on something more substantial than a mere showing that the settlement agreement would not have been entered into but for the existence of litigation pending in federal court.

By analogy to the doctrines of pendent and ancillary jurisdiction, the court recognized considerations of judicial economy might dictate retention of a state law issue in federal court, but it found no such considerations arguing against a separate state court action in *Fairfax*. *Id.* Finally the court observed Rule 60(b)(6) gave the *Fairfax* plaintiff the option of reinstating the original action, "allow[ing] the plaintiff to prove his case and obtain his relief on the merits of the underlying claim" (as an alternative to state court enforcement of the breached settlement agreement). *Id.* at 1306.

Strama acknowledges the force of the *Fairfax* analysis, but he argues (R. Mem. 2) his case involves one indicated exception to *Fairfax's* general rule.[5] Strama cites *Ow-*

---

5. Because this Court was not requested by either party to, and did not, incorporate the

terms of the Agreement in its dismissal order,

*ens v. Rush,* 654 F.2d 1370, 1379–80 (10th Cir.1981) for the proposition that a discharge in retaliation for an employee's exercise of his right to sue states a Section 1983 cause of action. Mem. 5–6; R. Mem. 2 and n.*. If so, Strama's retaliatory discharge claim assertedly provides an "independent ground upon which to base federal jurisdiction." *See Fairfax,* 571 F.2d at 1303.

There is however a considerably older authority by a responsible court that differs with *Owens.* In similar circumstances *Ball v. Yarborough,* 281 F.2d 789, 790 (5th Cir. 1960) found no viable Section 1983 claim. And if *Ball* rather than *Owens* were to prevail, the *Fairfax* analysis would require denial of enforcement of the Agreement for want of jurisdiction.[6] This is not to indicate any value judgment as to the relative strength of the two decisions, for even if *Owens* were believed to be the sounder authority the question would remain whether any potential benefits justify the risk that it is not.

### Prudential Considerations

It is worth taking a step backward to survey the situation:

1. Literal application of Rule 60(b)(6) makes no sense. Strama's original suit has already been tried against the other defendants, and it appears the maximum relief he could obtain if he were successful in a full-blown new trial against City would be what the settlement agreement gave him anyway.[7]

2. Jurisdiction to travel the alternate course—vacate the dismissal order and enforce the Agreement—is dubious at best for the reasons discussed at length in the preceding section.

3. Even were the jurisdictional issue resolved in favor of permitting enforcement of the Agreement, this case (unlike *Aro, see* 65 F.R.D. at 515) would not permit its *summary* enforcement because the very fact of City's breach is contested. Ans. Mem. 6.

Thus granting Strama's motion would enmesh this Court in a trial on the merits of the two *Strama v. Blair* substantive disputes—the retaliatory discharge claim and the breach-of-Agreement claims. And that trial would pose the risk of its being a nullity for lack of jurisdiction.

As against that scenario Strama has the risk-free alternative of bringing a new state court lawsuit in which he can assert *both* his claims (for state courts have concurrent jurisdiction over Section 1983 actions). Or if he prefers the federal courts, he can bring a new Section 1983 action in this District Court (in which case he would have to clear one jurisdictional hurdle—the *Owens-Ball* disparity[8]—but need not face all the problems this case poses), with a pendent claim to enforce the Agreement. Or he may opt (at least as to the Agreement) to pursue union grievance procedures in light of this opinion.

It is conventional wisdom that Rule 60(b)(6) relief is within the district court's discretion. 11 Wright and Miller § 2864, at 213–15. That doctrine is normally announced in contexts other than that presented here. But considerations of judicial economy, including the avoidance of possibly wasted adjudications, must surely also be a legitimate basis for exercise of Rule 60(b)(6) discretion.

Strama has a clear path available to the remedy he seeks. At best the road in this case to the *same* remedy is rock-strewn, and at worst this Court and the litigants must traverse the entire road only to find it blocked by a jurisdictional avalanche before

---

*Fairfax's* other stated exception is not available to Strama.

**6.** It should be emphasized that *Fairfax* reversed the district court's order enforcing the settlement agreement and returned the parties to square one. 571 F.2d at 1306.

**7.** That conclusion follows logically from the fact the jury verdict afforded Strama all the

damages he had sustained over and above the settlement.

**8.** Of course the *Owens-Ball* problem is present wherever the Section 1983 claim may be asserted, but that problem would not affect a state court's jurisdiction over the claim for breach of the Agreement.

the destination is reached. This Court declines to start down that road.

### Conclusion

Because of this Court's concerns as to jurisdiction and in the exercise of its discretion, Strama's Rule 60(b)(6) motion to vacate Albrecht's dismissal is denied. That motion was only a waystation leading to Strama's prayer for enforcement of the Agreement and his request for a hearing on his allegedly retaliatory discharge, both of which are also denied.