**UNITED STATES of America, Plaintiff,**

v.

**AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, etc., Defendant.**

**No. 81 C 4815.**

United States District Court, N.D. Illinois, E.D.

May 31, 1984.

Eileen M. Marutzky, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for plaintiff.

Steven Ackerman, Chicago, Ill., for defendant.

**1.** Associates are a partnership, the owners of the beneficial interest in the land trust that held title to the Apartments and was mortgagor under the mortgage.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In this mortgage foreclosure action Southeast Englewood Associates ("Associates") have returned to this Court, invoking virtually every subpart of Fed.R.Civ.P. ("Rule") 60(b), to ask the setting aside of the August 5, 1983 Decree of Foreclosure ("Decree") foreclosing the mortgage of the Perry Village Apartments ("Apartments").[1] Associates contend officials of the mortgagee, United States Department of Housing and Urban Development ("HUD"), entered into a settlement agreement with Associates and led them to believe the scheduled forced sale of the Apartments would not be held, then held the sale and repudiated the settlement. They ask not only that the Decree be vacated but also that this Court enter summary judgment or a preliminary injunction on their entitlement to specific performance of the settlement.[2]

For the reasons set forth in this memorandum opinion and order, Associates' Rule 60(b) motion is denied without prejudice to their initiation of a separate action to enforce the claimed settlement agreement. Thus this Court does not reach the issues governing Associates' additional motions.

Associates have extensively documented their story (which is accepted for purposes of this paragraph's fact recital). Associates reached a firm oral agreement with HUD officials Bob Rohlwing ("Rohlwing") and Darius Grayson ("Grayson") September 22, 1983. Associates' October 3, 1983 letter to Rohlwing memorializes the terms of that agreement. Later in the day on October 3, Associates tendered three checks totalling $40,000 to Rohlwing and Grayson pursuant to the settlement agreement, and HUD accepted and later cashed those checks. Nonetheless HUD conduct-

**2.** If vacation of the Decree is appropriate but summary judgment is not, Associates ask that discovery be opened so they may investigate the factual underpinnings of their theories under which HUD may be required to honor its agreement.

ed a Sheriff's sale of the Apartments October 11. Though Associates had been given formal notice, because of the agreement Associates did not expect the sale would go forward. Housing Director James Albrecht wrote Associates December 20, 1983 to apologize for HUD's failure to honor the agreement, promising return of the $40,-000. On January 9, 1984 HUD tendered three government checks totalling $40,000 to Associates, but the individual partners have not cashed those checks.

■ Despite the apparent equities of Associates' position, there is a serious flaw in their Rule 60(b) motion to vacate the Decree. As HUD points out, Associates complain only about HUD's conduct *after* entry of judgment. Plainly the "settlement" Associates seek to enforce is not a settlement that ended the original foreclosure suit, but is rather an accord (not a settlement at all as the term is generally used) allegedly entered into to provide for payment under the Decree that ended the litigation. Associates acknowledge (as they did when they negotiated the settlement) they were in very substantial default under the mortgage,[3] so the foreclosure was proper and the Decree was unexceptionable. What they really negotiated for was what is termed in the trade as a "workout."

That critical difference distinguishes this case from all cases Associates cite in which settlement agreements have been enforced. See, e.g., *Leon Industries, Inc. v. ICN Pharmaceuticals,* 472 F.Supp. 1241 (E.D. Mo.1979). And of course the distinction is meaningful because the public interest in settlement of legal disputes is not nearly so great when a matter has already been resolved by a court (as this Court did in its summary judgment and Decree in HUD's favor) as when it is still pending.

Associates call upon Rule 60(b)(1), (3), (5) and (6). There is a strong argument that

none of those subsections applies to the claimed breach of a post-judgment accord:

1. Clearly the Decree itself was not a "mistake" or product of "excusable neglect" under Rule 60(b)(1), and Associates do not claim it to be so.

2. Rule 60(b)(3) states a judgment may be set aside for "fraud" or "misconduct of an adverse party." However it is generally thought "misconduct" must be such that, if known at the time of entry of judgment, the court or trier of fact would have decided the case differently. See, e.g., *Wilkin v. Sunbeam Corp.,* 466 F.2d 714, 717 (10th Cir.1972), *cert. denied,* 409 U.S. 1126, 93 S.Ct. 940, 34 L.Ed.2d 258 (1973). Associates' allegations do not justify a different result in the case in chief: They do not deny they were in default.

3. Rule 60(b)(5) must be twisted out of shape to make it apply to this case. Its first branch, dealing with a judgment that has been "satisfied, released, or discharged," is rarely of use (see 11 Wright & Miller, *Federal Practice and Procedure: Civil* § 2863, at 202 & nn. 92–93 (1973 ed. and current pocket part)) and is really inapropos to the facts Associates rely on. And its second branch, under which prospective application of the judgment is no longer equitable, really applies either to injunctions[4] or to judgments other than those for money damages (though there is some limited authority to the contrary). Again what Associates seek here is not to set aside the judgment itself (a wholly proper one), but rather to obtain specific performance of a later agreement to undo its full impact.

4. Rule 60(b)(6)'s catch-all language only begs the question whether Associates seek relief from judgment or enforcement of an agreement reached independent of any judgment.

---

**3.** This Court granted HUD's summary judgment motion July 21, 1983, and no appeal was taken. That definitively established the rights of the parties, and foreclosure pursuant to the Decree was simply a means of enforcement—like executing on a money judgment.

**4.** On the strict standards for modifying an injunction because of changed circumstances, see *Duran v. Elrod,* 713 F.2d 292, 296 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1615, 80 L.Ed.2d 143 (1984).

■ Nonetheless courts have generally have not read Rule 60(b) so strictly, instead citing its broad language (especially that of Rule 60(b)(6)) as giving the District Court "authority to accomplish justice" (*Harman v. Pauley,* 678 F.2d 479, 480 (4th Cir.1982)), subject only to reversal for abuse of discretion (*id.; Ervin v. Wilkinson,* 701 F.2d 59, 60–61 (7th Cir.1983)). In the usual settlement/Rule 60(b) context in which an action has been dismissed pursuant to a settlement, after which an aggrieved party returns to court to enforce the settlement, courts often engage in a balancing process rather than parsing the language of Rule 60(b). If a petition to vacate is a more logical or appropriate subject of a separate action than of a Rule 60(b) motion, the Rule 60(b) motion is denied without prejudice to initiation of a separate action to enforce the settlement. *Musifilm, B.V. v. Spector,* 568 F.Supp. 578, 582 (S.D.N.Y.1983) and cases cited; see *Strama v. Peterson,* 96 F.R.D. 198 (N.D.Ill.1982).

Here a separate action to enforce the claimed accord would certainly be more appropriate. As in *Musifilm* and the cases it cites (including *Strama* ), Associates are really not trying to revive their right to try the original claim. There is virtually no similarity between the issues to be decided under Rule 60(b) and the issues that were resolved in the case in chief. Instead, if the judgment were vacated under Rule 60(b), Associates propose that this Court consider granting summary judgment in their favor, and if it does not Associates propose that this Court reopen discovery and presumably set the case—on the "settlement," not the original claim—for trial at some future date.

Apart from the many aesthetic similarities between the proceedings Associates propose and a separate lawsuit to enforce a contract, there are important practical reasons why a separate action is appropriate:

1. If such a separate action were filed in federal court, Associates would be required to allege some basis for invoking federal jurisdiction. While jurisdiction may not be a problem,[5] the dissimilarity between these proposed proceedings and the original case before this Court makes the propriety of requiring a jurisdictional allegation indisputable. See *Fairfax Countywide Citizens Association v. County of Fairfax,* 571 F.2d 1299, 1303 (4th Cir.), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978).

2. Associates' complaint would frame the issues for discovery purposes and provide allegations upon which HUD could file any motion to dismiss or any other relevant motion. This Court might of course require the parties to act as if a separate action were under way, but the necessity of doing so points to the appropriateness of filing a separate action.

Of course there is already a complaint in this action, but the total dissimilarity between its allegations and Associates' allegations makes it impossible to use the original complaint as a basis for jurisdiction, discovery or dismissal.

Moreover any benefits Associates may perceive from filing a Rule 60(b) motion rather than a separate action are either illusory or improper:

1. All the applicable law would be the same here as in a separate action. While Rule 60(b) purportedly governs Associates' motion, this Court can ascertain "such terms as are just" only by reference to the same principles that would control if this were a separate action. Both sides recognize this by arguing the law of estoppel against the government in their memoranda.[6]

2. This Court's familiarity with the issues in the case in chief would be of no

---

5. This Court expresses no judgment on questions of jurisdiction. When the United States is a party to a case like this federal jurisdiction as such may not be a problem, but as a sovereign it sets the terms upon which and the forums in which it may be sued (compare 28 U.S.C. §§ 1346 and 1491). Associates should be re- quired to meet those terms by asserting an independent basis for jurisdiction.

6. Associates have a long row to hoe in any separate action. Both the unfortunate story recited in this Court's opinion in *Pratte v. NLRB,* 530 F.Supp. 461, 463–65 (N.D.Ill.1981), and the equally unfortunate reversal of that decision at

value in the new proceedings, because the issues are so completely different.

3. Of course any forum-shopping motivation would be entirely improper. Associates surely did not choose to file a Rule 60(b) motion rather than a separate action to circumvent the random assignment system of this District Court or to bootstrap themselves into this District Court when jurisdiction might not otherwise exist, but that is the effect of what they have done.

Thus the balancing process used when a party moves under Rule 60(b) to enforce a settlement agreement counsels in favor of requiring a separate action.

### Conclusion

Associates seek to use Rule 60(b) to enforce not a litigation-concluding settlement agreement, but rather an accord entered into after this Court's final judgment in a case. Even if that were a proper use of Rule 60(b), the issues are more appropriately the subject of a separate action to enforce that accord. Thus Associates' Rule 60(b) motion is denied and their other motions are dismissed as moot.

683 F.2d 1038 (7th Cir.1982) illustrate the difficulty of asserting estoppel against the federal government. Just last week the Supreme Court appears to have closed still further whatever window to government estoppel may have been

left open by the earlier case law. *Heckler v. Community Health Services of Crawford County,* —— U.S. ——, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984).