571 F.2d 1299
 FAIRFAX COUNTYWIDE CITIZENS ASSOCIATION, Gum Springs Civic
Association, Springdale Civic Association, Cooktown Citizens
Association, William L. and Jeanne G. Paige, Ulysses O. and
Ada M. Scott, Roy and Evelyn A. Brent, Earnest W. and
Margaret E. Gibson, Appellees,
v.
COUNTY OF FAIRFAX, VIRGINIA, Joseph Alexander, Mrs. Martha
V. Pennino, John Herrity, Alan H. Magazine, Mrs. Audrey
Moore, James M. Scott, Marie B. Travesky, John P.
Schacochis, Warren I. Cikins, Individually and members,
County of Fairfax Board of Supervisors, Appellants.
FAIRFAX COUNTYWIDE CITIZENS ASSOCIATION, Gum Springs Civic
Association, Springdale Civic Association, William
L. and Jeanne G. Paige, Ulysses O. and
Ada M. Scott, Roy and Evelyn
A. Brent, Appellants,
v.
COUNTY OF FAIRFAX, VIRGINIA, Joseph Alexander, Mrs. Martha
V. Pennino, John Herrity, Alan H. Magazine, Mrs. Audrey
Moore, James M. Scott, Marie B. Travesky, John P.
Schacochis, Warren I. Cikins, Individually and members,
County of Fairfax Board of Supervisors, and Douglas B.
Fugate, Individually, and as Virginia State Highway
Commissioner, Appellees.
 Nos. 77-1190, 77-1248.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 9, 1978.
Decided March 6, 1978.
 
 Robert Lyndon Howell, Asst. County Atty., Alexandria, Va. (Frederic Lee Ruck, County Atty., Fairfax, Va., on brief), for appellants in 77-1190.
 John J. Beall, Jr., Asst. Atty. Gen. (Anthony F. Troy, Atty. Gen. of Va., Walter A. McFarlane, Deputy Atty. Gen., Richmond, Va., on brief), for appellees in 77-1248.
 Allison W. Brown, Jr., Washington, D. C. (Robert M. Alexander, Arlington, Va., Jack Greenberg and James M. Nabrit, III, New York City, on brief), for appellees and cross-appellants.
 Before WINTER, RUSSELL and WIDENER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 The County of Fairfax, Virginia (County) appeals from an order of the district court directing County to perform its remaining obligations under a 1972 settlement agreement between it and Fairfax Countywide Citizens Association (Association). Because we conclude that the district court lacked jurisdiction to issue the order, we reverse.[1]
 
 I.
 
 2
 In August 1971, several citizens associations located in Fairfax County, Virginia, and six individuals, filed suit in the district court alleging racial discrimination in the delivery of public services in violation of 42 U.S.C. §§ 1981, 1983 and the Equal Protection Clause of the Fourteenth Amendment. Specifically, plaintiffs claimed that a disproportionate number of unpaved and substandard roads in Fairfax County were located in predominantly black neighborhoods. Plaintiffs prayed a mandatory injunction compelling County to pave and upgrade the roads in question, including the construction of adequate drainage facilities, curbs, gutters and sidewalks.[2] In addition to naming County and certain of its officials as defendants to the action, plaintiffs also joined Douglas B. Fugate, the Virginia State Highway Commissioner and chief administrator of the Virginia Highway System. Following a denial of defendants' motions to dismiss, the case was set for trial on June 1, 1972.
 
 
 3
 On May 31, 1972, following extensive pretrial discovery, plaintiffs entered into two separate settlement agreements. The first, between plaintiffs and defendant Fugate, required the Commonwealth to upgrade six streets located in black neighborhoods in Fairfax County. These streets were already part of the Virginia secondary highway system[3] and, therefore, within the jurisdiction of the State Highway Department.[4] The second settlement agreement, between plaintiffs and County, required County to upgrade seventy-six additional roads in black neighborhoods within a three-year period. None of these roads was, at the time of the agreement, included in the Virginia secondary highway system. County, however, promised to "make every effort to have the . . . streets, when improved, taken into the State Highway System." If these efforts proved unsuccessful, County nonetheless recognized a "continuing responsibility to maintain these streets in a fair and equitable manner."
 
 
 4
 After securing these agreements, plaintiffs moved for dismissal of their claims against State and County. The motion was granted and three dismissal orders, each naming different defendants, were entered on June 1, 1972. The orders each recited that on plaintiffs' motion, and with defendants' consent, the case was dismissed. While Associations' later motion alleged that the settlement agreements were filed in open court (the docket entries do not so recite and the clerk's file does not contain them), the orders themselves did not mention that the parties had entered into settlement agreements; and they neither approved nor incorporated either settlement agreement.
 
 
 5
 Thereafter, the Commonwealth substantially performed its obligations under the settlement agreement. County likewise commenced performance of its obligations and, in the ensuing three years, upgraded twenty-five roads in black neighborhoods. In 1975, after certain black residents not party to the settlement agreement obtained a permanent injunction preventing County from upgrading one of the subject roads, County reviewed its obligations and determined that the settlement agreement was, at least in part, void as contrary to state law. Following this determination, County's Board of Supervisors passed a resolution, dated April 28, 1975, repudiating the settlement agreement.[5]
 
 
 6
 On August 5, 1975, plaintiffs moved the district court to vacate the dismissal order of June 1, 1972. Plaintiffs did not pray reinstatement of their law suit and an opportunity to try it. Rather, they prayed enforcement of the settlement agreements and, if state law prohibited County's performance, a declaration of the invalidity of the various statutes, regulations and administrative rulings pertaining to the Virginia State Highway System which purportedly prohibited such performance. On January 30, 1976, under authority of Rule 60(b)(6), F.R.Civ.P., the district court vacated its previous order of dismissal; and, on November 26, 1976, it entered an order directing County to upgrade the forty-three roads still in controversy.[6]
 
 II.
 
 7
 Neither in the proceedings in the district court nor in its initial brief filed with this court, did County challenge the jurisdiction of the district court to resolve what had become essentially a contract dispute between the parties. Because it appeared to us that, at the time enforcement was sought by Association, it was possible that federal subject-matter jurisdiction was lacking, we requested that the jurisdictional issue be briefed and argued. Upon consideration of the various arguments advanced and authorities cited, we conclude that this issue is indeed dispositive and that the district court lacked jurisdiction to enter an enforcement order.
 
 III.
 
 8
 As the sole authority supporting the district court's exercise of federal jurisdiction to enforce the settlement agreement, Association cites Aro Corp. v. Allied Witan Co., 531 F.2d 1368 (6 Cir.), cert. denied, 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976), a case arising on facts virtually indistinguishable from those in the case at bar.
 
 
 9
 In the Aro case, Aro Corporation had originally filed an action for patent infringement against Allied Witan Company (Allied) under 28 U.S.C. § 1338. Prior to trial, Aro and Allied settled their dispute by means of a licensing agreement, and by stipulation of the parties, the complaint was dismissed. Six weeks later, Allied breached the agreement by refusing to tender the initial royalty payment. Aro thereupon filed a motion under Rule 60(b)(6), F.R.Civ.P., praying both that the district court vacate its prior dismissal order and that Allied be compelled to perform its obligations under the licensing agreement. Defendant challenged the district court's jurisdiction to grant the relief sought; but the district court ruled that it had the requisite subject-matter jurisdiction, 65 F.R.D. 513 (N.D. Ohio 1975), and the Sixth Circuit affirmed, holding first that defendant's repudiation of the settlement agreement constituted "full justification" under Rule 60(b)(6) for reopening the proceedings; and second, that the district court was empowered to enforce the settlement agreement notwithstanding the lack of diversity of citizenship between the parties. 531 F.2d at 1371.
 
 
 10
 We are in agreement with the Sixth Circuit that, upon repudiation of a settlement agreement which had terminated litigation pending before it, a district court has the authority under Rule 60(b)(6)[7] to vacate its prior dismissal order and restore the case to its docket. See also Chief Freight Lines Co. v. Local Union No. 886, 514 F.2d 572 (10 Cir. 1975); Kelly v. Greer, 334 F.2d 434 (3 Cir. 1964). We respectfully differ, however, with the Aro court in its conclusion that, once the proceedings are reopened, the district court is necessarily empowered to enforce the settlement agreement against the breaching party. We are of the opinion that the district court is not so empowered unless the agreement had been approved and incorporated into an order of the court, or, at the time the court is requested to enforce the agreement, there exists some independent ground upon which to base federal jurisdiction.[8]
 
 
 11
 A district court is a court of limited jurisdiction "(a)nd the fair presumption is (not as with regard to a court of general jurisdiction, that a cause is within its jurisdiction unless the contrary appears, but rather) that a cause is without its jurisdiction till the contrary appears," Turner v. President, Directors and Company of the Bank of North America, 4 Dall. 7, 10, 1 L.Ed. 718, 719 (1799). The burden of establishing jurisdiction is on the party claiming it. McNutt v. General Motors Accept. Corp., 298 U.S. 178, 182-83, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). After canvassing the possible sources of jurisdiction in the instant case, we do think that Association has not met its burden.
 
 
 12
 Association's contract claim did not arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The settlement agreement between Association and County, while serving to terminate litigation of a federal claim, was a private contract entered into after private negotiations between the parties. Both its validity and the interpretation of its terms are governed by Virginia law.[9] If, instead of filing a motion under Rule 60(b) (6), Association had filed a new complaint in the district court, alleging breach of contract and seeking specific performance, there is little doubt that the claim would have been dismissed on jurisdictional grounds.[10] See Arvin Industries, Inc. v. Berns Air King Corp., 510 F.2d 1070 (7 Cir. 1975). The same is true if the parties had negotiated and entered into a settlement agreement prior to any litigation, and thereafter Association, alleging the breach of the agreement, sought to invoke federal jurisdiction to enforce it. See Kysor Industrial Corporation v. Pet, Incorporated, 459 F.2d 1010 (6 Cir.), cert. denied, 409 U.S. 980, 93 S.Ct. 314, 34 L.Ed.2d 243 (1972).
 
 
 13
 Thus, since there is neither federal question nor diversity jurisdiction in the instant case, we must look elsewhere if the jurisdiction of the district court is to be sustained.[11] In Aro, the Sixth Circuit advanced what appeared to be alternative jurisdictional theories and we turn to them.
 
 
 14
 First, it was said that "courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." 531 F.2d at 1371. See also United States v. Newport News Shipbuilding and Dry Dock Co., 571 F.2d 1283, (4 Cir. 1978) (dictum); Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2 Cir. 1974); Kukla v. National Distillers Products Co., 483 F.2d 619, 621 (6 Cir. 1973); Massachusetts Casualty Insurance Co. v. Forman, 469 F.2d 259, 260 (5 Cir. 1972); Autera v. Robinson, 136 U.S.App.D.C. 216, 419 F.2d 1197, 1200 (1969); Kelly v. Greer, 365 F.2d 669, 671 (3 Cir. 1966), cert. denied, 385 U.S. 1035, 87 S.Ct. 772, 17 L.Ed.2d 682 (1967); Cummins Diesel Michigan, Inc. v. The Falcon, 305 F.2d 721, 723 (7 Cir. 1962).
 
 
 15
 While this principle is sound under appropriate circumstances, it is not a principle of federal jurisdiction. An analysis of the cases cited by the Aro court in support of the principle shows that, except for one, they all concerned settlement agreements which were intended to be incorporated into final orders[12] or for which independent federal jurisdiction existed.[13] The single exception was a state case which involved a court of general, not limited, jurisdiction.[14] Likewise, in Newport News Shipbuilding and Dry Dock Co., a recent decision of this court where the principle was repeated with approval, the jurisdiction of the district court was not at issue.[15]
 
 
 16
 In our view, the inherent power of a district court to enforce settlement agreements, like any other power inherently vested in a federal court, presupposes the existence of federal jurisdiction over the case or controversy.
 
 
 17
 As a second alternative ground for upholding federal jurisdiction, both the district court and the court of appeals in Aro invoked a concept of derivative jurisdiction. Because the settlement agreement resolved the dispute giving rise to the original litigation over which the district court had jurisdiction, any dispute involving the agreement itself was likewise properly before the court. As stated by the district court: "(J)urisdiction rests upon the same footing as when the case began . . . ." 65 F.R.D. at 514. The court of appeals developed the point as set forth in the margin.[16]
 
 
 18
 It is, of course, well established that, under appropriate circumstances, a federal court may exercise derivative jurisdiction over a dispute despite the absence of an independent basis for federal jurisdiction. The doctrines of both pendent and ancillary jurisdiction fall within this category. See, e. g., Moor v. County of Alameda, 411 U.S. 693, 714-15, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) (dictum); United Mine Workers v. Gibbs,383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Dery v. Wyer, 265 F.2d 804 (2 Cir. 1959). We think, however, that derivative jurisdiction should be grounded on something more substantial than a mere showing that the settlement agreement would not have been entered into but for the existence of litigation pending in federal court.
 
 
 19
 Consideration of the rationale of Gibbs and Dery supports this conclusion. In each, derivative jurisdiction was upheld only because the claim for which no independent jurisdiction existed derived from the same nucleus of operative facts as the claim for which there did exist independent jurisdictional grounds. For reasons of economy, reasoned the courts, it makes little sense to remit one of two related claims to state court since the same facts will form the basis of decision in both.[17]
 
 
 20
 That consideration is absent here. Association's contract claim is factually and legally distinct from the claim giving rise to the original litigation. To remit Association to state court in order to have its agreement with County enforced will not create duplicating litigation since the operative facts bearing on the validity of the agreement bear no relation to those underlying Association's § 1983 claim.
 
 
 21
 While not relying on the sort of economy interest upon which the doctrines of pendent and ancillary jurisdiction are based, Aro nonetheless suggests that to divest a district court of jurisdiction to enforce a settlement agreement in cases such as this will "render settlement . . . a trap for the unwary." 531 F.2d at 1371. We think that this is not so. As in the instant case where federal jurisdiction to sue for a breach of a settlement agreement does not otherwise exist, a plaintiff who claims a breach of his settlement agreement has available two courses of action. He may take his contract claim to state court where he may seek enforcement of the settlement agreement. Because enforceability is likely to turn on questions of state law, the state court is an appropriate forum for resolving this dispute.[18] Alternatively, the injured plaintiff may file a Rule 60(b)(6) motion in federal court, requesting that the prior dismissal order be vacated and the case restored to the court's trial docket. This restores the litigants to the status quo ante and allows the plaintiff to prove his case and obtain his relief on the merits of the underlying claim.
 
 IV.
 
 22
 To summarize: We find no independent basis for asserting jurisdiction over the contract dispute, and we see no considerations of either judicial economy or fairness requiring the settlement agreement to be enforced in federal court. We therefore conclude that the district court lacked jurisdiction to enforce the agreement. We reverse the order of the district court compelling County to perform its remaining obligations under its agreement with Association. We do not disturb the portion of the district court's order which struck its order of dismissal. Association may proceed to the trial of its original claim if it be so advised.
 
 
 23
 REVERSED AND REMANDED.
 
 
 
 [1]
 Association also filed a cross-appeal in this case to require a modification of the district court's order. Because we decide that the district court lacked jurisdiction to enter an order enforcing the settlement agreement, Association's cross-appeal is rendered moot, and we will not consider it further
 
 
 [2]
 This was one of many civil rights suits filed in the wake of the Fifth Circuit's decision in Hawkins v. Town of Shaw, Mississippi, 437 F.2d 1286 (1971), aff'd on reh'g, 461 F.2d 1172 (1972), holding that statistical evidence of gross inequalities in the delivery of public services to black and white residents is sufficient to establish a prima facie case of unlawful racial discrimination
 
 
 [3]
 Va. Code § 33.1-67 (1950) provides that: "The secondary system of State highways shall consist of all of the public roads . . . in the several counties of the State not included in the State (Primary) Highway System."
 
 
 [4]
 Va. Code § 33.1-69 (1950) provides that: "The control, supervision, management and jurisdiction over the secondary system of State highways shall be vested in the Department of Highways and the maintenance and improvement . . . of such secondary system of State highways shall be by the State under the supervision of the State Highway Commissioner."
 
 
 [5]
 Briefly, the Board's conclusion that it lacked authority to continue performing the settlement agreement was reached by this reasoning: State law prohibits local government units from expending funds for the construction, maintenance or improvement of roads not eligible for inclusion in the secondary system of State highways. Va. Code § 33.1-225 (1950). To be eligible for inclusion in the State system, there must exist a public right-of-way of not less than thirty feet. Va. Code § 33.1-230 (1950). In addition, by regulation of the Highway and Transportation Commission, a road must also service at least three houses per mile in order to be eligible for inclusion in the State system. County believes that nineteen of the forty-three roads still in controversy are permanently ineligible for inclusion either because a thirty-foot public right-of-way is unavailable or because the minimum service requirement is unmet. As to these nineteen, County believes that § 33.1-225 absolutely forbids the expenditure of county revenues for paving and other improvements. As to the remaining twenty-four, County believes that, while these are not permanently ineligible, they are presently ineligible in that the requisite public right-of-way has not been obtained. Moreover, says the County, there exists substantial resistance in the affected black neighborhoods to the acquisition by County of the necessary rights-of-way
 
 
 [6]
 The district court rejected County's contentions as set forth in footnote 5, supra, holding in essence that County's past disregard for the statutory prohibition of Va. Code § 33.1-225 (1950) estopped it from denying its liability under the settlement agreement to maintain and improve roads not eligible for inclusion in the secondary system of State highways. Because we decide this case on jurisdictional principles, we express no view as to the merits of County's defense to repudiation or the district court's rejection of that defense
 
 
 [7]
 Fed.R.Civ.P. 60(b) provides, in pertinent part, that: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . . (6) any other reason justifying relief from the operation of the judgment."
 
 
 [8]
 Where the settlement agreement is approved and incorporated into an order of court, the district court possesses jurisdiction to enforce its own order. Where there has been no incorporation, it is likely that the "independent ground" most often asserted will be that of diversity of citizenship between the parties to the settlement agreement. 28 U.S.C. § 1332. This is not to suggest, however, that other bases of federal jurisdiction may not also be available in appropriate situations, e. g., 28 U.S.C. §§ 1345, 1346 (United States as party)
 
 
 [9]
 It is true that, in its motion seeking specific performance of the settlement agreement, Association asked the district court to declare unconstitutional any state law prohibiting County's performance. While this presents a potential federal question, it is well established that § 1331 jurisdiction obtains only if federal law "creates the cause of action." American Well Works Co. v. Layne & § Bowler Co., 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916). See also Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). At the time enforcement was sought, Association's "cause of action" was for breach of contract a claim arising under state law
 
 
 [10]
 Since both parties to this litigation are citizens of Virginia, no jurisdiction would obtain under 28 U.S.C. § 1332, nor does there exist any special statutory grant of jurisdiction empowering the district court in the instant case to take cognizance over the contract dispute
 
 
 [11]
 Certainly Rule 60 supplies no grant of jurisdictional authority. It merely permits a district court to try the original cause of action when the district court concludes that the ends of justice warrant reinstating the original claim
 
 
 [12]
 Kukla v. National Distillers Products, supra; Cia Anon Venezolana De Navegacion v. Harris, 374 F.2d 33 (5 Cir. 1967); All States Investors, Inc. v. Bankers Bond Co., 343 F.2d 618 (6 Cir. 1967)
 In each of these cases, parties to litigation pending in district court had entered into an agreement prior to final judgment whereby defendant consented to a judgment in favor of plaintiff; but prior to entry of judgment, defendant had repudiated. Rather than remitting plaintiff to proof of his entire case, the district court entered judgment in accordance with the terms of the repudiated agreement. The settlement agreement was thus viewed as a stipulation on the merits of the original claim whereby defendant admitted liability. See also Cummins Diesel Michigan, Inc. v. The Falcon, supra.
 
 
 [13]
 Meetings and Expositions, Inc. v. Tandy, supra. See also Massachusetts Casualty Ins. Co. v. Forman, supra; Autera v. Robinson, supra; Skyline Sash, Inc. v. Fidelity and Casualty Co., 378 F.2d 369 (3 Cir. 1967), aff'g, 267 F.S. 577 (W.D.Pa.1966); Kelly v. Greer, supra
 
 
 [14]
 Melnick v. Binenstock, 318 Pa. 533, 179 A. 77, 78 (1935) ("A compromise or settlement of litigation is always referable to the action or proceeding in the court where the compromise was effected; it is through that court the carrying out of the agreement should thereafter be controlled.")
 The principle of a court's inherent power to enforce settlement agreements appears to have had its origins in state-court decisions. However, since state courts, unlike federal courts, are courts of general jurisdiction, state courts generally need not concern themselves with the source of their jurisdictional authority over a dispute. Therefore, a statement such as found in Melnick should not be construed as a jurisdictional statement; nor should it be relied upon, as it was in Aro, in resolving an issue of federal jurisdiction.
 
 
 [15]
 Because in Newport News Shipbuilding and Dry Dock Co. the United States was a party to the settlement agreement, subject-matter jurisdiction clearly existed on independent grounds
 
 
 [16]
 As stated in 531 F.2d at 1371:
 The Agreement in question is not merely a patent license. It is also the contractual vehicle by means of which the parties reached agreement settling their litigation. Both types of agreements are contracts; but a settlement agreement is more than a patent license . . . . To permit the absence of diversity to divest the court of jurisdiction after settlement, when it could not have done so prior to settlement, would be to exalt form over substance and to render settlement in such cases a trap for the unwary. The license cannot be separated from the purpose of its birth.
 
 
 [17]
 A recent note suggests that even this rationale is overly expansive when due weight is given to the fact that federal courts are courts of limited jurisdiction. The note argues that consistent with Article III of the Constitution pendent jurisdiction should be recognized only when the rights created by state and federal law are substantially identical, irrespective of the factual predicate giving rise to the assertion of those rights. Note, The Concept of Law-Tied Pendent Jurisdiction: Gibbs and Aldinger Reconsidered, 87 Yale L.J. 627 (1978)
 
 
 [18]
 In the instant case, the state forum is particularly appropriate because of the complexity of the state law questions involved. See footnote 5, supra; Note, Virginia Subdivision Law: An Unreasonable Burden on the Unwary, 34 Wash. & Lee L.Rev. 1223 (1977). While we do not question the competence of the district court to resolve these questions, it is nonetheless preferable, when a decision requires interpretation of statutes establishing a state administrative or regulatory regime, that such interpretation be authoritatively made in the state-court system. Cf. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 498-500, 61 S.Ct. 643, 85 L.Ed. 971 (1941)