**SEREDINSKI, Louise, Appellant,**

v.

**CLIFTON PRECISION PRODUCTS CO., a DIVISION OF LITTON SYSTEMS, INC.**

No. 84–1543.

United States Court of Appeals, Third Circuit.

Argued May 2, 1985.

Decided Oct. 28, 1985.

Alan B. Epstein (argued), Thomas Rapp, Jablon, Epstein & Wolf, Philadelphia, Pa., for appellant.

Judith E. Harris (argued), Alison Pease, Harris and Kahn, Philadelphia, Pa., for appellee.

Before GIBBONS and HIGGIN-BOTHAM, Circuit Judges and SAROKIN, District Judge.*

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from a final order of the district court dismissing the complaint

---

* Honorable H. Lee Sarokin, United States District Court for the District of New Jersey, sitting by designation.

of appellant Louise Seredinski. Seredinski brought suit against her employer, Clifton Precision Products Company ("Clifton"), alleging (in addition to a variety of state law claims) that she had been a victim of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982) ("Title VII"), and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (1982). For the reasons that follow, we will vacate in part the judgment of the district court, and remand for further proceedings.

### I.

Seredinski began work for Clifton as an assembler in September of 1956. Through the years, she was promoted to and held supervisory positions, first as foreperson and finally as supervisor of approximately seventy production workers. On February 19, 1982, Seredinski lost her job to Hank Williams, a younger, less experienced male. She was taken out of production and placed in a position in the Customer Service Department. Seredinski was then over forty years of age and was the only female supervisor responsible for more than twenty employees. She was also the oldest supervisor in the company. Alleging age and sex discrimination, she filed a claim with the Pennsylvania Human Relations Commission ("PHRC") on March 16, 1982. The charge was later deferred to the Equal Employment Opportunity Commission ("EEOC"). The EEOC, however, never had the opportunity to act upon the charge, as the PHRC worked out a settlement agreement that was signed by the parties on April 20, 1982. As a result, both the EEOC and PHRC closed their administrative files on the charge.

On November 17, 1982, Seredinski was informed that her salary would be reduced in three increments to bring it within the range of salaries offered to Customer Service Personnel. Her salary was reduced from $12.63 to $7.75 per hour between November 29, 1982 and April 4, 1983. On August 24, 1983, she filed a charge with the EEOC alleging that her salary was reduced in retaliation for the charge of discrimination she previously filed with the PHRC.[1] It does not appear that Seredinski filed this second charge with the PHRC, and it is unclear whether EEOC deferred the charge to the state agency.[2] After an EEOC investigation, she was given notice of her right to sue. App. at 33.

Seredinski filed suit in the district court on February 17, 1984. She alleged that her initial demotion was discriminatory and that the subsequent wage reduction was retaliatory, in violation of Title VII, ADEA, and the Pennsylvania Human Rights Act. She included a claim for breach of an implied covenant of good faith and fair dealing as well as for intentional infliction of emotional distress. The final count of the complaint averred that the salary reduction was a breach of the settlement agreement which disposed of her initial charge.[3]

1. It is not entirely clear from Seredinski's pleadings when she learned of the pay reduction. The latest date given is November 17, 1982. Clifton conceded in its motion to dismiss that it may have been as late as November 17, 1982. To accord Seredinski every favorable inference, as we must in reviewing a motion to dismiss, we will take this as the date the claim accrued.

2. Seredinski asserts that any untimeliness or procedural defects were effected by the EEOC in violation of its own regulations. Although this could be construed as an admission of non-deferral, there is no documentary evidence proving whether the EEOC did defer the charge to the PHRC.

3. The agreement provides, in pertinent part:

It is understood that this agreement does not constitute an admission by the respondent of a violation of any State or Federal Anti-discrimination Law.

Inasmuch as the respondent and the complainant wish to settle the above complaint/charge amicably, it is agreed by and between the parties that:

1. Respondent shall provide Complainant with a letter stating that her job transfer was based primarily on current economic conditions.

2. Respondent agrees that it shall consider Complainant for any available promotions for which she is qualified.

3. Respondent shall provide Complainant with a job description for her present position.

In response to the complaint, Clifton filed a motion to dismiss, arguing that the Title VII and ADEA claims were time barred and requesting the court not to exercise pendent jurisdiction over the state claims.

Before responding to Clifton's motion, Seredinski amended her complaint, adding an entirely new theory—fraud in the inducement of the PHRC settlement agreement. She alleged that Clifton told her before, during, and after the signing of the settlement agreement that her salary would not be reduced, and that she would never have signed the agreement but for this representation. Accordingly, she also amended her prayer for relief to seek a declaration that the settlement was void and "a full resolution of all issues relating to the original complaint before the EEOC and PHRC as though those administrative proceedings were not terminated by said Agreement." App. at 61.

On September 6, 1984, the district court dismissed Seredinski's complaint in its entirety, finding that the Title VII and ADEA claims arising from the alleged retaliation were time barred and that the fraudulent inducement claim arose under state, rather than federal law. With no federal claims remaining, the district court declined to exercise jurisdiction over the pendent state claims. This appeal followed.

## II.

In dismissing Seredinski's fraudulent inducement claim, the district court characterized it as an attempt to "vary [the PHRC settlement's] terms by parole evidence" which was therefore "redundant to her charge of breach of the settlement agreement." Relying on *Weills v. Caterpillar Tractor Co.*, 553 F.Supp. 640 (N.D.

4. Respondent agrees that Complainant shall be used in production as the need occurs.
The respondent further agrees not to act adversely in any manner against the complainant because of this complaint/charge; and not to permit such adverse action by any of the respondent's employe[e]s or associates. In reliance thereupon, the respondent and the complainant request the PHRC and the EEOC

Cal.1982), the district court held that the fraud claim was "no longer a Title VII or ADEA claim, but rather a state law question requiring interpretation of a contract." App. at 69. *Weills* involved a suit for breach of an agreement between the plaintiff and Caterpillar to settle a charge of sex discrimination the plaintiff had filed some five years earlier. Noting that it was a suit to *enforce* the settlement agreement, 553 F.Supp. at 643, the court held:

Plaintiff's rights derived from Title VII lost their federal nature when they became embodied in the settlement contract. The issues raised by this action focus on the parties' intent and understanding of the rights created by that settlement agreement, not a right that will be supported or defeated depending on the construction or effect given Title VII.

553 F.Supp. at 644.

We think that the district court mischaracterized Seredinski's claim and, accordingly, that its reliance on *Weills* was misplaced. As her simultaneous amendment to the prayer for relief makes clear, by adding a claim of fraudulent inducement Seredinski sought to *void*, rather than *enforce*, the settlement. As such, the fraud claim was an alternative to her state law breach of contract claim; possibly it was *inconsistent* with it, but it was surely not *redundant* to it. Even if it is true that Seredinski's Title VII and ADEA rights "lost their federal nature when they became embodied in the settlement contract," the purpose of the fraudulent inducement claim was to "undo" that settlement and restore her original Title VII and ADEA charge, which—it is conceded—was timely filed.[4]

to ratify this agreement; and to close as adjusted voluntarily the above docketed complaint/charge.
App. at 9.

4. Clifton's reliance on *Fairfax Countywide Citizens Assoc. v. County of Fairfax*, 571 F.2d 1299 (4th Cir.), *cert. denied*, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978) is similarly misplaced. In that case, a race discrimination suit,

The question before us, then, is not whether a suit seeking enforcement of an agreement settling federal claims arises under federal law, but rather whether a suit seeking to rescind such an agreement because of fraudulent inducement arises under federal law, even though the agreement was never incorporated into any federal court order. The Supreme Court's decision in *Dice v. Akron, Canton & Youngstown R.R.*, 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952) is controlling on this point. In *Dice* an injured railroad worker brought a suit for negligence under the Federal Employer's Liability Act ("FELA"). As a defense, the railroad claimed that it had obtained a written release. The plaintiff, however, claimed that the release was obtained through fraud and was therefore void. The Ohio Supreme Court held that Ohio law governed the question of fraud. The Supreme Court reversed, stating:

> Congress in § 1 of the [FELA] granted petitioner a right to recover against his employer for damages negligently inflicted. State laws are not controlling in determining what the incidents of this federal right shall be. Manifestly the federal rights affording relief to injured railroad employees under a federally declared standard could be defeated if states were permitted to have the final say as to what defenses could and could not be properly interposed to suits under the [FELA]. Moreover, only if federal law controls can the [FELA] be given that uniform application throughout the country essential to effectuate its purposes. Releases and other devices designed to liquidate or defeat injured employees' claims play an important part in the [FELA]'s administration. Their validity is but one of the many interrelated questions that must constantly be determined in these cases according to uniform federal law.

342 U.S. at 361–62, 72 S.Ct. at 314 (citations omitted).

Title VII and ADEA are also remedial statutes granting employees a federal cause of action to vindicate important rights violated by their employers. Conciliation and settlement play a crucial role in the administration of both statutes, and—just as in the FELA context—the threat of overreaching by employers to defeat claims is ever present. And the need for a uniform standard is no less in the present context, otherwise hostile states could frustrate the vindication of federal rights through their local antidiscrimination laws and agencies. *Cf. Oscar Mayer Co. v. Evans*, 441 U.S. 750, 764, 99 S.Ct. 2066, 2075, 60 L.Ed.2d 609 (1979). Thus, "[t]he Supreme Court's rationale for its holding in *Dice* convinces us that federal law also governs the validity of any method used by employers to avoid the application of the Age Discrimination in Employment Act," *Ott v. Midland-Ross Corporation*, 523 F.2d 1367, 1369 (6th Cir.1975), and Title VII as well. Accordingly, we hold that Seredinski's attempt to revive her original Title VII and ADEA discrimination charge, alleging fraud in the procurement of the settlement, arises under federal law.

### III.

In addition to reviving the original sex and age discrimination charge arising out of her initial demotion, Seredinski seeks to pursue additional Title VII and ADEA claims based on the subsequent wage reduction that she alleges was a retaliation for bringing the first complaint. The district court held that the retaliation claim was untimely under both Title VII and ADEA. We believe that the district court was correct with respect to Title VII, but

the plaintiffs sought to vacate the voluntary dismissal that was entered after the parties reached a settlement agreement. The plaintiffs did not, however, "pray reinstatement of their law suit and an opportunity to try it. Rather, they prayed enforcement of the settlement agreements...." 571 F.2d at 1302. The court

held that the federal nature of the underlying rights did not, in itself, create federal jurisdiction over a suit to enforce a settlement. As noted above, the instant fraudulent inducement claim does not seek enforcement of a settlement agreement, but rather seeks reinstatement of the underlying federal claims.

erred with regard to ADEA. We shall address these issues separately.

## A. *Title VII Limitations Periods*

■■■ To bring a civil action under Title VII, an aggrieved party must first file a complaint with EEOC and, if the complaint is not resolved at the administrative level, obtain a "right-to-sue" letter from EEOC. 42 U.S.C. § 2000e–5(f)(1). There are time limitations on both the filing of the administrative charge and the filing of the law suit.[5]

To determine the applicable limitations periods for administrative actions under Title VII, it is first necessary to consider whether it is brought in a "deferral state"; *i.e.* a state or subdivision "which has a State or local law prohibiting the practice alleged and establishing or authorizing the state or local authority to grant or seek relief" from practices prohibited under Title VII. 42 U.S.C. § 2000e–5(d). In such jurisdictions the EEOC must afford the state or local agency a reasonable time to remedy the violation alleged. *Id.* It is undisputed that Pennsylvania is a deferral state, as the PHRC's jurisdiction substantially overlaps with the EEOC's.

In a deferral state, a charge under Title VII must be filed with the EEOC within 300 days of when the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e). There is, however, an important proviso: "no charge may be filed ... by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the state or local law, unless such proceedings have been

earlier terminated...." 42 U.S.C. § 2000e–5(c). The net result of these two provisions is that where state proceedings are commenced by the EEOC sending notice to the state agency upon its receipt of a Title VII charge, as is often the case in deferral states, *see Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), the 300-day limitation period is effectively cut to 240 days, because the Title VII charge—though it has been received by EEOC—may not be deemed "filed" until sixty days later. *See Mohasco Corporation v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). *See also Shaffer v. National Can Corporation*, 565 F.Supp. 909, 911 (E.D.Pa.1983).[6]

Seredinski concedes that she was aware of the allegedly retaliatory pay cut no later than November 17, 1982. She filed her charge with the EEOC on August 24, 1983 —280 days later. Though it is unclear whether EEOC in fact referred the charges to the PHRC at that time, as its regulations would have required, 29 C.F.R. § 1601.13 (1985), we will assume that this was done.[7] Even so, the charge could not be deemed filed with the EEOC until 60 days later,[8] and therefore was not filed within the 300-day limitation period.

■■■ Seredinski contends that the EEOC has, by regulation, essentially overruled the *Mohasco* "240-day rule". The regulation provides that

charges arising in jurisdictions having a [state deferral agency] but which charges are apparently untimely under the applicable state or local statute of limitations are filed with the Commission

---

**5.** Assuming that the charge is timely filed and the EEOC issues a "right-to-sue" letter, a Title VII complainant then has 90 days to file a lawsuit. 42 U.S.C. § 2000e–5(f)(1). This appeal, however, involves only the administrative time limitations, as Clifton does not contend that the suit was filed more than 90 days after issuance of the "right-to-sue".

**6.** A charge filed with EEOC between 240 and 300 days will be deemed timely only if the state proceedings are terminated during that period. *Mohasco*, 447 U.S. at 814 n. 16, 100 S.Ct. at 2491 n. 16.

**7.** We have previously made it clear that the failure of EEOC to follow its regulations and refer charges to an appropriate state agency for filing will not deprive complainants of their right to proceed before EEOC. *See Sharpe v. Philadelphia Housing Authority*, 693 F.2d 24, 26 n. 3 (3d Cir.1982).

**8.** Regardless of whether state proceedings were actually commenced as they should have been, and as Seredinski alleges they were, it is clear that no such proceedings were terminated prior to expiration of the 300-day period.

upon receipt. Such charges are timely filed with the Commission within 300 days from the date of the alleged violation. Copies of all such charges will be forwarded to the appropriate [deferral agency].

29 C.F.R. § 1601.13(a)(3) (1985). Seredinski argues that regardless of when proceedings begin before the state agency, a charge is timely filed as long as it is received by the EEOC within 300 days. This reading of the regulation is overly expansive and without merit. As the district court noted, the EEOC does not have the power to overrule by regulation a Supreme Court decision or to alter the statutory scheme. Nor do we think that it is necessary to give this regulation an interpretation that would require its invalidation. This court noted in *Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748, 752 n. 4 (3d Cir.), *cert. denied*, 464 U.S. 852, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983), that the regulation was promulgated in response to *Oscar Mayer Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), where the Supreme Court held that although a complainant must file before the state agency in order to sue in federal court, she need not do so within the applicable state statute of limitations. 441 U.S. at 761-62, 99 S.Ct. at 2074. We stated in *Kocian*:

> The new regulation indicates that the EEOC will now forward charges to state agencies, even though untimely, to allow the state agencies to consider the charges if they so desire. Consistent with *Oscar Mayer*, federal claimants will be entitled to the 300 day period for filing with the EEOC, even if the state filing is untimely.

707 F.2d at 752 n. 4.

The district court correctly interpreted this EEOC regulation to be a codification of *Oscar Mayer*, rather than an attempted overruling of *Mohasco* or redrafting of Title VII. As such, it does not even purport to disturb the 240-day rule or change the result in this case.

---

**9.** It is therefore unnecessary to reach Clifton's contention that where a state waives deferral, it

■ Finally, Seredinski contends that under a 1982 Worksharing Agreement between EEOC and PHRC, PHRC has waived its exclusive 60-day right to resolve Title VII charges initially processed by the EEOC. (Such waiver is authorized by statute. 42 U.S.C. § 2000e–5(d).) She argues that where there has been a waiver, the 60-day deferred requirement no longer applies, and that charges. received by the EEOC may be immediately deemed filed. *Cf. Douglas v. Red Carpet Corp.*, 538 F.Supp. 1135, 1138–39 (E.D.Pa.1982). Under this theory, Seredinski's retaliation charge would be deemed filed on the 280th day.

Seredinski has not cited to us any reference to her having raised this argument before the district court, and thus it should be deemed waived on appeal. In any event, we note that it is not at all clear that Seredinski's charge is one for which the PHRC would waive 60-day deferral. Under Paragraph III(c) of the Worksharing Agreement, PHRC initially processes, *inter alia*, "[a]ny charge where the PHRC is a party to a Conciliation Agreement or a Consent Decree which, upon mutual consultation and agreement is determined to be relevant to the disposition of the charge," and "[a]ny charge alleging retaliation for filing a charge with PHRC or for cooperating with the PHRC." App. at 23–24. Arguably, Seredinski's charge falls within either or both of the categories. As the court in *Douglas v. Red Carpet Corp.*, *supra*, noted, with respect to charges encompassed within Paragraph III(c), Pennsylvania continues to operate as a deferral state.[9] *Id.* at 1139. Thus, the Worksharing Agreement cannot be interposed to avoid the 240-day rule of *Mohasco* in this case.

## B. *ADEA Limitations Periods*

■ 29 U.S.C. § 626(c) creates a private right of action for persons aggrieved under the ADEA. As in the case of Title VII,

is the 180-day, rather than the 300-day limitations period that applies.

suits by the EEOC are the preferred enforcement mechanism, and the individual employee's right of action terminates upon the commencement of an enforcement suit by EEOC. *Id.* Unlike Title VII however, ADEA does not require that a "right-to-sue" letter be first obtained. Rather, a complainant must simply file a charge with the EEOC not less than 60 days before commencing suit, to permit EEOC to attempt "to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d).

Like Title VII, ADEA has deferral provisions and the time for filing a charge depends on whether deferral applies. In deferral states, such as Pennsylvania, the charge must be filed within 300 days of the allegedly illegal act. 29 U.S.C. § 626(d)(2). Neither the EEOC nor the aggrieved individual may bring suit in a deferral state until 60 days after state proceedings have commenced, unless such proceedings have terminated earlier. 29 U.S.C. § 633(b).[10] Noting that these time limitations are analogous to those of Title VII, the district court held that Seredinski's retaliation claim was also untimely under ADEA.

Though there are certainly similarities between the Title VII and ADEA limitations periods, *see Oscar Mayer Co. v. Evans,* 441 U.S. at 756, 99 S.Ct. at 2071, we believe that the district court gave inadequate attention to some crucial differences. "[U]nder Title VII persons aggrieved must file with a state antidiscrimination agency before filing with [EEOC]. See 42 U.S.C. § 2000e–5(c). Under the ADEA, by contrast, grievants may file with state and federal agencies simultaneously. See 29 U.S.C. §§ 626(d) and 633(b)." *Id.* (footnote omitted). The § 633(b) requirement that 60 days must pass after the commencement of state proceedings does not apply to the

filing of a charge with EEOC, but rather applies to the actual filing of a civil action in district court. Under ADEA it is the federal court, not the EEOC, that must defer to the state. 441 U.S. at 764, 99 S.Ct. at 2075. Thus, the *Mohasco* 240-day rule does not apply to ADEA claims. Because Seredinski filed her ADEA charge with EEOC within 300 days of the alleged unlawful retaliation, we hold that her retaliation suit under ADEA is not time-barred.[11]

## CONCLUSION

For the foregoing reasons, we will vacate the judgment of the district court, except insofar as it dismissed Seredinski's retaliation claim under Title VII (Count I), and order that her complaint be reinstated except for Count I. Costs taxed against the appellee.

SAROKIN, District Judge, concurring in part and dissenting in part:

Although I concur with the majority as to the federal court's jurisdiction over plaintiff's suit to revive her original Title VII claim and as to the timeliness of plaintiff's ADEA claims, I cannot agree that plaintiff's subsequent retaliation claim under Title VII was untimely based on this record. As the majority points out, in a Title VII deferral state, such as Pennsylvania, the statute requires that any charge be filed with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e). At the same time, "no charge may be filed ... by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the state or local law, unless such proceedings have been earlier terminated...." 42 U.S.C. § 2000e–5(c). Even if a charge is submitted to the EEOC prior to the 300 day limitation period, it will not

---

**10.** In addition to these administrative time limitations, ADEA adopts by reference the two year statute of limitations for civil suits from the Portal-to-Portal Act (three years for willful violations), 29 U.S.C. §§ 626(e) and 255. Compliance with the limitation on civil suits is not in issue.

**11.** Again, we assume that EEOC followed regulations and deferred to PHRC upon receipt of Seredinski's charge, thus commencing state proceedings on August 24, 1983. Her law suit was filed on February 17, 1984, more than 60 days later.

be deemed to have been "filed" until this deferral requirement has been fulfilled. *Mohasco Corporation v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). Thus, in order to be absolutely certain that she will be able to "file" her charge with the EEOC within the 300-day limitation period, a claimant must commence state proceeding within 240 days. If she fails to do so, and if the state agency fails to terminate its proceedings prior to the 300-day cut-off, the claimant is foreclosed from timely filing with the EEOC. *Mohasco, supra.* A claimant can commence proceedings before the state agency after the 240-day mark and still be able to file a timely charge before the EEOC, however, if the state agency fortuitously happens to terminate its proceedings prior to the expiration of the 300-day outer limit. *Id.* at 814 n. 16, 100 S.Ct. at 2491 n. 16. The commencement of state proceedings in deferral states is therefore governed by a "240-day maybe" rule: a charge submitted within 240 days will ensure timeliness with the EEOC, but a charge submitted thereafter *may be* still timely *if* the state agency resolves the claim prior to the expiration of 300 days. *See Smith v. Oral Roberts Evangelistic Ass'n, Inc.,* 731 F.2d 684, 687 (10th Cir.1984); *Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1211 (3d Cir.1984).

Here, plaintiff submitted her charge 280 days after the alleged wrong. Thus, if the state deferral agency had failed to act on her charge by the 300th day, plaintiff would have been foreclosed from timely filing with the EEOC. If the state agency had succeeded in processing plaintiff's charge before the expiration of the 300-day period, that is, within twenty days, however, then the plaintiff could still have timely filed with the EEOC. The ultimate timeliness of plaintiff's charge depended on the action of the state agency.

The rub here is that plaintiff's charge apparently never reached the state agency. In reasonable reliance on EEOC regulations, plaintiff submitted her charge to the EEOC. EEOC regulations provide that the EEOC will forward all charges over which the state deferral agency has subject matter jurisdiction, and as to which the state agency has not waived deferral, to the state agency. 29 CFR § 1601.13(a)(3), 1601.13(a)(5)(ii)(A). Assuming that plaintiff's charge was not one as to which the state agency had waived deferral, as the majority has done, the regulations make clear that plaintiff's charge ought to have been deferred by the EEOC. Yet the facts in the record, construed in the light most favorable to the plaintiff, indicate that plaintiff's charge was not deferred as it should have been. Because it was not so deferred, plaintiff was peremptorily foreclosed from meeting the Title VII deferral requirement for timely filing with the EEOC.

Under these circumstances, the plaintiff should have been given an opportunity to attempt to meet Title VII's procedural prerequisites to suit by having the district court action stayed, and her charge remanded to the EEOC for deferral to the state agency. Timely filing with the EEOC is not a jurisdictional requirement. *Zipes v. Trans World Airways, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). As a mere condition precedent to suit, it is subject to "waiver as well as tolling when equity so requires." *Id.* Where, as here, the EEOC has failed, in violation of its own regulations, to defer the plaintiff's charge to the appropriate state agency, and the plaintiff is thus deprived of the opportunity in a timely manner to fulfill the requirement that proceedings be commenced and terminated in the state deferral agency before her charge can be deemed filed with the EEOC, there is ample ground for equitably tolling the limitation period to afford the plaintiff an opportunity to attempt to meet this prerequisite to suit. *See Kocian v. Getty Refining & Marketing Co.,* 707 F.2d 748, 752–53 and ns. 4 & 8 (3d Cir.), *cert. denied* 464 U.S. 852, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983) (suggesting that the EEOC's failure to comply with its own regulations requiring deferral to state agency would constitute grounds for equitable tolling in Title

VII action); *see also McKee v. McDonnell Douglas Technical Services Co.,* 700 F.2d 260, 264 (5th Cir.1983) (Title VII claimant should not be penalized for EEOC's failure to follow its own regulations); *Hicks v. ABT Associates, Inc.,* 572 F.2d 960, 964 (3d Cir.1978) (same). Such equitable tolling is especially warranted in this instance in light of the "sound and established policy that procedural technicalities should not be used to prevent Title VII claims from being decided on the merits." *Gooding v. Warner-Lambert Co.,* 744 F.2d 354, 358–59 (3d Cir.1984). Given the existence of grounds for tolling the 300-day limitation period, the procedure of staying the district court action and remanding the matter comports with that endorsed by the Supreme Court in *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) (appropriate procedure, where plaintiff has failed to comply with requirement of resort to state remedies in employment discrimination action, is to stay district court proceedings until procedural prerequisite can be fulfilled).

The majority apparently has chosen to assume that plaintiff's charge was deferred by the EEOC, relying on allegations in plaintiff's amended complaint. It is true that, in her amended complaint, the plaintiff alleged that

> Plaintiff has exhausted all administrative remedies having timely filed complaints of continuing sex and age discrimination and retaliation in employment against the defendant with the United States Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission as required in the individual statutes and having received notices of failure of conciliation by those agencies, with appropriate direction that the individual right to sue is assigned to the plaintiff.

Amended Complaint, ¶ 6. Yet the amended complaint nowhere alleged the date of filing of her charge, or when the state proceedings commenced to process said charge were assertedly terminated. Thus, in ruling on the defendant's motion for untimeliness, the district court was necessarily re-

quired to look beyond the amended complaint and to consider factual materials submitted by the parties; the motion to dismiss was thus properly converted to one for summary judgment. Fed.R.Civ.P. 12(c). As such, it was governed by the rule that "[i]nferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion." *Gans v. Mundy,* 762 F.2d 338, 340 (3d Cir.1985), quoting *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). The burden of demonstrating the plaintiff's untimeliness fell to the defendant. *Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d at 1211.

Here, regardless of the boilerplate allegation in plaintiff's complaint, the record indicated, if anything, that the plaintiff had filed a charge with the EEOC and that the agency had failed to defer the charge to the PHRC, in violation of its own regulations. *Seredinski v. Clifton Precision Products,* No. 84–0804, Mem.Op. at 3 n. 4 (E.D.Pa. Sept. 6, 1984). In argument on the motion before the district court, plaintiff took the position that any failure of deferral was the result of the EEOC's failure to comply with its own regulations. *Id.* Had the district court viewed the facts in the record in the light most favorable to the plaintiff, as it was required to do under Fed.R.Civ.P. 56, it should have assumed that the EEOC failed to defer plaintiff's charge. Given that state of facts, summary dismissal on the ground that plaintiff submitted her charge to the EEOC after the 240 day mark was incorrect as a matter of law, and held plaintiff to limitation period stricter than that required in Title VII. I therefore cannot agree with the majority's affirmance of this ruling, and respectfully dissent.