**OFFICE OF THRIFT SUPERVISION,**
**Plaintiff,**

v.

**Eugene N. HOOPER, Defendant.**

**Civ. A. No. 86–0044–H.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

June 22, 1994.

Lance D. Cassak, Office of Thrift Supervision, Enforcement/Litigation (Northeast Re-

68

gion), Jersey City, NJ, Richard A. Jones, Office of Thrift Supervision (Southeast Region), Atlanta, GA, for plaintiff.

Thomas J. Stanton, Leonard, Ralston, Stanton & Danks, Bernard R. Corbett, Tighe, McInroy & Corbett, Washington, DC, for First Federal Sav. Bank of Shenandoah Valley.

J. William Gilliam, Gilliam, Sanders and Brown, Fairfax, VA, for Uni–Fed Financial Corp.

Thomas G. Nolan, Receiver, Richmond and Fishburne, Charlottesville, VA.

Stephen Daniel Keeffe, Falls Church, VA, for defendant.

### MEMORANDUM OPINION

MICHAEL, District Judge.

Despite the efforts of federal regulators, counsel, third parties, and this court, this case has remained tenaciously on the court's docket for eight years. The case is ripe for resolution, and it is time to dispose of this matter once and for all.

### I. Factual Background

Mr. Eugene Hooper, the defendant, entered into a Cease and Desist order with the Federal Home Loan Bank Board (FHLBB), now known as the Office of Thrift Supervision (OTS),[1] on July 31, 1985. Pursuant to its enforcement authority under 12 U.S.C. § 1464(d), the FHLBB ordered Mr. Hooper and his family members to divest themselves of all stock holdings in the First Federal Savings and Loan Association of Front Royal[2] in excess of five percent of the bank's outstanding shares. Mr. Hooper owned over twenty-four percent of the bank's stock.

On December 9, 1986, this court issued an enforcement order, pursuant to 12 U.S.C. § 1464(d)(8)(A), directing Mr. Hooper and his family members to abide by the terms of the Agency order. *See Federal Home Loan Bank Board v. Hooper*, 656 F.Supp. 719 (W.D.Va.1986). Mr. Hooper flouted this

court's order just as he flouted the order of the Agency, and later pledged part of the stock as security for a loan. This court threw him in jail for contempt on January 21, 1988, and fined him $100 per day until he complied with the December 9, 1986, order. To escape detention, Hooper produced a contract to sell the stock to Mr. David Boyles, Jr. The Agency disapproved the contract and, after Mr. Hooper represented that he was trying in good faith to make the contract acceptable and to complete the sale, and due to bankruptcy proceedings, four years passed before the Agency sought another contempt order.

Just days before the hearing on his failure to abide by the terms of this court's prior orders, held on June 22, 1992, Hooper produced another contract for the sale of his stock that he had just negotiated with Uni–Fed Financial Corp. ("Uni–Fed"). After the hearing, the court appointed Mr. Thomas Nolan receiver of the stock, but granted Hooper thirty days to consummate the sale to the buyer specified in the contract. Of course, in true form, Hooper failed, and the contract turned out to be yet another instrument of delay. Over one year later, the court again found him in contempt for failing to hand over the stock to Mr. Nolan. The court imposed a fine on Hooper of $500.00 per day that he refused to abide by this court's order, and allowed Mr. William Gilliam of Uni–Fed to expeditiously satisfy the terms of his contract with Hooper to purchase the stock.

One of the terms of the contract was that Uni–Fed or its assignee would file a Change in Control Application with the OTS. Mr. Gilliam filed the application on November 12, 1993, and informed Mr. Nolan of this fact on November 22. On February 7, 1994, Uni–Fed assigned its rights under the contract to First Federal. First Federal gave notice to Mr. Nolan on March 22, 1994, that it intended to purchase the stock. First Federal waived its right to require approval by the

**1.** With the effective date of FIRREA, August 9, 1989, Congress created OTS, which assumed responsibilities previously exercised by the FHLBB. OTS succeeded to the interests of the FHLBB in this matter. "Agency" will be used to refer interchangeably to the FHLBB or the OTS.

**2.** Since that time, the institution has changed its name to First Federal Savings Bank of Shenandoah Valley. "First Federal" refers to the bank under either name.

OTS of a Change in Control Application, as provided in the contract.

Mr. Hooper declared Chapter 11 bankruptcy on April 16, 1993, in the U.S. Bankruptcy Court for the Eastern District of Virginia (Alexandria Division). Shortly thereafter, it was converted to a case pending under Chapter 7. Upon the motion of Mr. Robert G. Mayer, the Trustee in the matter, the bankruptcy court entered an order authorizing the trustee to compromise the enforcement litigation filed by the OTS. *In re Eugene N. Hooper,* Case No. 93–11599–AB, May 17, 1994.

The last in a seemingly eternal series of hearings was held on May 31, 1994. Mr. Hooper did not show and did not object to the proposed order approving the sale of the stock to First Federal. Much to the court's dismay, however, the Hooper daughters, represented by Mr. Robert B. Patterson, have taken up the cause where their father left off. First, they argue that this court has no jurisdiction over the contract, seeking to place the issue into the Virginia state courts for years more litigation. Second, they argue that even if the court does have jurisdiction, the daughters terminated the contract and therefore the sale to First Federal cannot proceed. As explained below, these arguments are clearly frivolous.

## II. Analysis

### A. Jurisdiction

■ Counsel for the Hooper daughters has apparently forgotten that this matter is before the court pursuant to a court order, entered in response to Mr. Hooper's refusal to abide by the order of a federal regulatory agency, exercising authority granted to it under federal law. *See* 12 U.S.C. § 1464(d)(1) (West 1989). The court exercised jurisdiction to enforce the order under 12 U.S.C. § 1464(d)(8)(A) (West 1989). The court maintains jurisdiction over the contract because the contract attempts to dispose of the stock that is the subject of federal en-

forcement proceedings and this court's prior orders.

■ The court has the power to issue orders of contempt and orders mandating the conveyance of property to enforce its judgments, as it has done in this case. *See* Fed.R.Civ.Pro. 70; 12 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3021–22 (West 1984 and Supp.1994). It is elementary that "a district court possesses jurisdiction to enforce its own order." *Fairfax Countywide Citizens Assn. v. County of Fairfax,* 571 F.2d 1299, 1303 (4th Cir. 1978).[3] Since the court has this power, it necessarily has the power to declare the contract valid or invalid, insofar as the contract furthers or thwarts the court order that preceded the contract's formation. Accordingly, the defendants' first argument is without merit.

### B. Terms of the Contract

■ The court considers the terms of the contract material only insofar as they are consistent with the prior orders of this court mandating that Mr. Hooper abide by the terms of the Cease and Desist Order entered into with the OTS, and that he sell the excess stock expeditiously. Contracts must be read in light of the applicable law existing at the time of their formation. This includes court orders. *Home Building & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 435, 54 S.Ct. 231, 239, 78 L.Ed. 413 (1934); *Bannum, Inc. v. Town of Ashland,* 922 F.2d 197, 202 (4th Cir.1990). Even if the Hooper daughters enjoyed the right of termination that they claim, this court could order the sale to proceed. An examination of the contract clearly reveals, however, that the daughters have no such right.

The contract of sale to Uni–Fed provides for termination by Mr. Hooper or his daughters in only two instances: 1) where all parties to the contract mutually consent; and 2) if the regulatory authorities "do not approve the [Change in Control] Application, without

---

**3.** It goes without saying that the court's jurisdiction over the contract is not drawn into doubt by the Supreme Court's recent decision in *Kokkonen v. Guardian Life Insurance Co.,* —— U.S. ——, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), taking the view of the Fourth Circuit in the *Fairfax* case, *supra,* holding that courts do not have jurisdiction to enforce settlement agreements dismissing federal actions.

material modification, within 365 days from the date of the Change in Control Application unless approval is waived by purchaser or its assigns."

There has not been mutual consent. Second, not only has First Federal, as assignee, waived its right to approval, but even if there had been no waiver or no assignment the 365–day deadline has not yet arrived. Contrary to the representations of Mr. Patterson, the plain language of the contract measures the 365–day period from the date of filing by Uni–Fed or its assign. Mr. Gilliam filed the application on November 12, 1993, so the period within which the daughters can exercise a unilateral power of termination, absent waiver, would not have arrived until November 12, 1994, 365 days after the filing. First Federal is the legitimate assignee under the contract and the contract remains in force.

### III. Conclusion

The court, finding that the arguments of the defendants are meritless, approves the proposed sale of the excess Hooper stock. The court will therefore order that the Hooper stock held by Mr. Nolan, as receiver, be sold immediately to the assignee under the contract, First Federal Savings Bank of Shenandoah Valley.

An appropriate order shall this day issue.

### ORDER

This matter has come before the Court upon the Joint Application of Thomas G. Nolan, Receiver herein, and First Federal Savings Bank of Shenandoah Valley ("First Federal"), for an Order Approving the Sale of Stock and Final Settlement of all matters and disputes pending in this cause.

**WHEREAS,** the Receiver was appointed by this Court in this matter to take possession of certain stock of First Federal, which stock was held by the Defendant Eugene N. Hooper and members of his immediate family, and

**WHEREAS,** the Receiver became the record owner of 59,370 shares of the capital stock of First Federal on March 16, 1993 and thereupon proceeded to market the stock in line with this Court's orders of July 17, 1992

and March 4, 1993 and, to the extent that it was not inconsistent with those orders, a certain Stock Escrow, Purchase and Sale Agreement dated June 12, 1992 between and among the Defendant and various members of his immediate family as Sellers, Uni–Fed Financial Corp. as Purchaser, and First Federal as Escrow Agent (the "June 12 Agreement"), and

**IT NOW APPEARING** that First Federal is the assignee of the rights of Uni–Fed Financial Corp. as Purchaser under the June 12 Agreement, and

**IT FURTHER APPEARING** that First Federal has waived its rights under the June 12 Agreement to require approval by the Plaintiff Office of Thrift Supervision of a Change of Control Application, and

**IT FURTHER APPEARING** that Mr. Hooper has filed a Chapter 7 proceeding *In Re: Eugene N. Hooper,* Case No. 93–11599–AB, now pending in the U.S. Bankruptcy Court for the Eastern District of Virginia, Alexandria Division, and

**IT FURTHER APPEARING** that this matter is not subject to the Automatic Stay under 11 U.S.C. § 362(a) by virtue of the exception provided under 11 U.S.C. § 362(b)(4) in that this is "the continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power," and

**IT FURTHER APPEARING** that the Joint Application should be approved, it is this day

### ADJUDGED AND ORDERED

That the Receiver is hereby authorized to close with First Federal as hereinafter provided:

1. The Receiver shall transfer the 59,370 shares of First Federal stock held by him to Bernard R. Corbett, Trustee for the benefit of First Federal.

2. The Receiver is authorized to accept in exchange for such transfer a certificate of partial satisfaction of the judgment held by First Federal against Eugene N. Hooper and Eugene N. Hooper, Trustee, in the amount

of $590,000, with interest at 12 percent from June 3, 1991, costs, and attorney fees of $4,387.50, such partial satisfaction being in the amount of $474,960.00, the amount of such partial satisfaction having been determined pursuant to the terms of the June 12 Agreement, at the rate of $8.15/share for each of the 59,370 shares held by the Receiver.

3.  Upon payment by First Federal of the Receiver's fees to date in the amount of $17,000.00, which sum is hereby approved, the Receiver shall deliver to Bernard Corbett First Federal Stock Certificate No. C1762, duly endorsed in blank, representing ownership of all 59,370 shares of stock he holds in this cause, and thereafter deliver the original certificate of partial satisfaction to Robert N. Mayer, Trustee in Bankruptcy for Eugene N. Hooper.  Thereupon, the Receiver shall certify to the Court the execution of this order and he shall then stand fully discharged and released from any further duty and liability herein and his bond shall be released, and this matter shall be closed and ended.

The Clerk of the Court is hereby directed to send a certified copy of this Order to the Receiver and all counsel of record.